# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
### AT LOUISVILLE

CARL LEE ADKINS, JR.                                                    PLAINTIFF

v.                                              CIVIL ACTION NO. 4:18-CV-P24-JHM

LESTER LEWIS *et al.*                                                   DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This is a *pro se* civil rights action brought by a convicted prisoner pursuant to 42 U.S.C.
§ 1983. This matter is before the Court for screening of the complaint pursuant to 28 U.S.C.
§ 1915A. For the reasons set forth below, the Court will dismiss some claims, and allow others
to proceed.

### I. SUMMARY OF COMPLAINT

Plaintiff Carl Lee Adkins, Jr., is currently incarcerated at Green River Correctional
Complex (GRCC). He was previously incarcerated at Kentucky State Penitentiary (KSP). He
brings this action against six individuals – Lester Lewis, a doctor at KSP; Karen Ramey, a
"provider" at KSP; Chase Byrum, an "officer" at KSP; DeEdra Hart[1]; Felicia Howard, a "unit
administrator" at GRCC; and Tina Moore, a "case and training officer" at GRCC. He sues
Defendants in their individual capacities only.

Plaintiff states that he brings this § 1983 action "alleging denial of medical care,
excessive use of force, and retaliation" in violation of his First and Eighth Amendment rights.

Plaintiff alleges that he previously had foot surgery which resulted in him "having a
metal plate being screwed into the heel bone of [his] right foot." He then alleges that on March

---

[1] Plaintiff lists DeEdra Hart as a defendant in the caption of the § 1983 complaint form. He does not, however, list
her as a defendant in the "Defendants" section of the form or indicate where she works. Nonetheless, based on the
allegations set forth in the body of the complaint, it appears that Defendant Hart is an employee of GRCC.

28, 2017, while housed at KSP, he met with Defendant Ramey, told her about his surgery, and informed her that that he was experiencing "pain and mobility issues when [he] applies pressure to his right foot and also when the weather changes to cold temperatures." He states the he further explained to Defendant Ramey that the condition became worse when force was applied to his ankle in the form of ankle restraints. Plaintiff states that he requested that Defendant Ramey provide him physical therapy and a cane to assist with walking. According to Plaintiff, Defendant Ramey never examined his foot but told him that she "did not see a problem" with the way he walked. Plaintiff alleges that Defendant Ramey told him that she would not prescribe him a cane or physical therapy but that he should talk to the "provider" at the facility to which he was being transferred. Plaintiff states that he filed another sick call form regarding his foot on April 26, 2017, and that on May 5, 2017, an x-ray was taken of his foot. Plaintiff states that on May 11, 2017, Defendant Ramey informed him that the x-ray did not show any injury.

Plaintiff next alleges that on May 17, 2017, he met with Defendant Dr. Lewis, explained the pain he was experiencing, and again requested a cane and "to have his foot properly examined." Plaintiff states that Defendant Lewis agreed to have Plaintiff's foot x-rayed again but did not prescribe a cane for Plaintiff.

Plaintiff then states that on August 13, 2017, he wrote to the KSP Warden to request a cane but that the Warden responded that Plaintiff's medical need for the cane had to be confirmed by Defendant Lewis.

With regard to Defendant Byrum, Plaintiff alleges that although Plaintiff informed him of his foot injury, Defendant Byrum forced him to walk in ankle restraints to the infirmary even though Plaintiff asked him to remove the ankle restraints because they caused him pain. Plaintiff

further states that, on this occasion, Defendant Byrum forced him to navigate several flights of stairs while bound in ankle restraints.

Plaintiff states that he was transferred to GRCC on September 20, 2017. He alleges that on November 29, 2017, Defendant Howard told him to move "to a upper floor in Dorm One." Plaintiff states that he explained to Defendant Howard that using stairs caused him pain in his foot and further informed Defendant Howard that GRCC "medical staff prescribed Plaintiff a cane and restricted Plaintiff to bottom bunk." Plaintiff states that he implored Defendant Howard not to make him move to the upper floor, but that she "refused to acknowledge Plaintiff's injury" and told him "to move to the upper floor anyway."

Plaintiff states on that on December 6, 2017, Plaintiff wrote a letter to Defendant Hart stating that he had been erroneously moved to the upper floor and that the constant use of stairs caused him pain in his foot. Plaintiff states that he requested that Defendant Hart move him to a lower floor but that she refused.

Plaintiff next alleges that on December 18, 2017, four officers came into his cell, cuffed him, and removed all of his personal property. Plaintiff states that he was advised that his property was being taken "per Defendant Howard's order" and that his property would be returned when Defendant Howard "was done with it." Plaintiff states that he was left without clean clothes, hygiene, or correspondence materials for approximately three days. Plaintiff states that he was told by a former cellmate that his property was taken because Plaintiff was "crazy" and "keeps filing grievances." Plaintiff also states that, when his property was returned, he noticed "relevant legal materials were missing."

Plaintiff next states that on December 25, 2017, he informed Defendant Moore of his medical condition and requested that he be housed on a bottom floor. Plaintiff states that Defendant Moore told him to "wait until after the holidays to be moved."

Finally, Plaintiff alleges states that on December 31, 2017, he fell down the stairs and "was rushed to the facility's medical unit" where he was "treated for head, foot, and leg injuries." Plaintiff states that his right foot is "permanently bruised, swollen, and stiff" and that "the pain becomes so unbearable that he usually cannot walk." Plaintiff states that "when he has severe pain, he becomes unable to flex his foot and when the pain lessens it can take up to an hour before he can walk again." Plaintiff alleges that, after his fall, he was moved to the bottom floor.

As relief, Plaintiff seeks compensatory and punitive damages and "physical therapy."

## II. LEGAL STANDARD

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the complaint, or any portion of it, if the court determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* § 1915A(b)(1), (2); *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).

In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "But the district court need not accept a 'bare assertion of legal conclusions.'" *Tackett*, 561 F.3d at 488 (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

Although this Court recognizes that *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), "[o]ur duty to be 'less stringent' with pro se complaints does not require us to conjure up unpled allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted). And this Court is not required to create a claim for Plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). To command otherwise would require the Court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## III. ANALYSIS

"Section 1983 creates no substantive rights, but merely provides remedies for deprivations of rights established elsewhere." *Flint ex rel. Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001). Two elements are required to state a claim under § 1983. *Gomez v.*

*Toledo*, 446 U.S. 635 (1980). "[A] plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "Absent either element, a section 1983 claim will not lie." *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

### A. Deliberate Indifference to a Serious Medical Need

To establish an Eighth Amendment violation premised on inadequate medical care, a prisoner must demonstrate that the defendant acted, or failed to act, with "deliberate indifference to serious medical needs." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)); *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834 (6th Cir. 2002). "'Deliberate indifference' by prison officials to an inmate's serious medical needs constitutes 'unnecessary and wanton infliction of pain' in violation of the Eighth Amendment's prohibition against cruel and unusual punishment." *Miller v. Calhoun Cty.*, 408 F.3d 803, 812 (6th Cir. 2005) (quoting *Estelle v. Gamble*, 429 U.S. at 104). A claim of deliberate indifference under the Eighth Amendment has both an objective and a subjective component. The objective component requires the existence of a sufficiently serious medical need. *Turner v. City of Taylor*, 412 F.3d 629, 646 (6th Cir. 2005). To satisfy the subjective component, the defendant must possess a "sufficiently culpable state of mind," rising above negligence or even gross negligence and being "tantamount to intent to punish." *Horn v. Madison Cty. Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994). Put another way, "[a] prison official acts with deliberate indifference if he knows of a substantial risk to an inmate's health, yet recklessly disregards the risk by failing to take reasonable measures to abate it." *Taylor v.*

*Boot*, 58 F. App'x 125, 126 (6th Cir. 2003) (citing *Farmer v. Brennan*, 511 U.S. at 832).  Mere

negligence will not suffice.  *Farmer v. Brennan*, 511 U.S. at 835-36.

Where a prisoner has received some medical attention and the dispute is over the

adequacy of the treatment, federal courts are generally reluctant to second guess medical

judgments.  *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976).

> We distinguish between cases where the complaint alleges a complete denial of
> medical care and those cases where the claim is that a prisoner received inadequate
> medical treatment. Where a prisoner has received some medical attention and the
> dispute is over the adequacy of the treatment, federal courts are generally reluctant
> to second guess medical judgments and to constitutionalize claims which sound in
> state tort law.

*Id*. (citations omitted).   Mere disagreement over medical treatment cannot give rise to a

constitutional claim of deliberate indifference.  *Durham v. Nu'Man*, 97 F.3d 862, 869 (6th Cir.

1996).

For purposes of this initial review, the Court will assume that Plaintiff's foot pain, which

he states causes him difficulty walking, constitutes a serious medical need.  Thus, the Court must

determine whether Plaintiff's allegations show that Defendants Ramey and Lewis were

deliberately indifferent to this need.

Plaintiff claims that although he advised both Defendants Ramey and Lewis, his medical

providers at KSP, of his prior foot surgery and the severe pain he experienced in his right foot

when he walked, neither Defendant would prescribe him a cane or physical therapy.  Plaintiff

does acknowledge, however, that Defendant Ramey listened to his concerns regarding his foot,

observed his gait, and then ordered an x-ray of his foot which did not show any injury and that,

when Plaintiff complained that his pain persisted, Defendant Lewis thereafter agreed to have

Plaintiff's foot x-rayed a second time.

Based on these allegations, the Court concludes that Plaintiff has failed to state a claim against them for deliberate indifference to a serious medical need. These allegations are not sufficient to show that Defendants Ramey and Lewis perceived a serious risk of harm to Plaintiff and then recklessly disregarded that risk. Rather, these allegations show that these Defendants provided medical care to Plaintiff for his foot, but that Plaintiff disagreed with their decision not to prescribe physical therapy or provide him with a cane. *See, e.g.*, *United States ex rel. Hyde v. McGinnis*, 429 F.2d 864, 867-68 (2nd Cir. 1970) ("The prisoner's right is to medical care – not the type or scope of medical care which he personally desires. A difference of opinion between a physician and a patient does not give rise to a constitutional right or sustain a claim under § 1983.") (quoting *Coppinger* v. *Townsend*, 398 F.2d 392, 394 (10th Cir. 1968)).

**B. Deliberate Indifference to Safety**

Plaintiff alleges that Defendants Howard, Hart, and Moore forced him to move to and/or stay in an upper floor cell at GRCC even though he informed them about his severe foot pain and the difficulty he had using stairs. In addition, Plaintiff alleges that he specifically told Defendant Howard that GRCC medical officials had placed him on medical restrictions which included having a cane and being assigned to a bottom bunk and that she still refused to house him on the first floor. Plaintiff also alleges that he informed Defendant Moore that, due to his medical condition, he should be "moved to bottom floor as prescribed by medical." Ultimately, Plaintiff alleges that because these Defendants failed to house him in a cell on the first floor of GRCC, he fell down a flight of stairs and was seriously injured.

Upon review, the Court will allow Eighth Amendment claims for deliberate indifference to Plaintiff's safety to proceed against Defendants Howard, Hart, and Moore in their individual capacities.

**C. Excessive Force**

Plaintiff also indicates that he is bringing an excessive-force claim in this action. The Court construes Plaintiff's complaint as asserting this claim against Defendant Byrum, the KSP officer who forced him to walk in ankle restraints to the infirmary on one occasion even though Plaintiff advised him that they caused him pain and aggravated his foot condition.

"The Eighth Amendment prohibition on cruel and unusual punishment protects prisoners from the 'unnecessary and wanton infliction of pain.'" *Barker v. Goodrich*, 649 F.3d 428, 434 (6th Cir. 2011) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). "Whether [a defendant's] alleged conduct constitute[s] excessive force in violation of the Eighth Amendment depends on 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Id.* (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). Relevant factors in this analysis include "the extent of the injury suffered by the inmate" and "the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *United States v. Bunke*, 412 F. App'x 760, 765 (6th Cir. 2011) (quotes and citations omitted). A claimant need not establish a "significant injury" to prove an excessive force violation. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). The *Wilkins* Court, however, cautioned that the extent of the injury is still meaningful in the analysis:

> This is not to say that the "absence of serious injury" is irrelevant to the Eighth Amendment inquiry. [*Hudson*, 503 U.S. at 7]. "[T]he extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation." *Id.* (quoting *Whitley*, [475 U.S.] at 321). The extent of injury may also provide some indication of the amount of force applied. As we stated in *Hudson*, not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Id.* at 9. "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the

conscience of mankind." *Id.* at 9-10 (some internal quotation marks omitted). An inmate who complains of a "push or shove" that causes no discernible injury almost certainly fails to state a valid excessive force claim. *Id.* at 9 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.1973)).

*Id.*

Here, Plaintiff's allegations show nothing more than a *de minimus* use of force and *de minimis* injury. *See, e.g., Hutson v. Felder*, No. 5:07-183-JMH, 2008 U.S. Dist. LEXIS 69642, at *12 (E.D. Ky. Sept. 10, 2008) ("Temporary or minor discomfort is insufficient to establish a claim of a constitutional magnitude . . ."). Moreover, Plaintiff does not indicate that he had been placed on any type of medical restriction which prohibited the use of ankle restraints on him or that Defendant Byrum had otherwise been advised by medical providers at KSP that ankle restraints should not be used on Plaintiff. Thus, Plaintiff's allegations simply do not suggest that Defendant Byrum's actions were "repugnant to the force of mankind." Accordingly, the Court finds that Plaintiff's claim against Defendant Byrum must be dismissed for failure to state a claim upon which relief may be granted. *See Rodriguez v. Farrell*, 280 F.3d 1341, 1351 (11th Cir. 2002) ("Painful handcuffing, without more, is not excessive force in cases where the resulting injuries are minimal.") (citations omitted); *McCreary v. Sandoval*, No. 3:12-cv-00145-LRH, 2012 U.S. Dist. LEXIS 193734, at *4-6 (D. Nev. June 7, 2012) (dismissing excessive force claim because harm was "*de minimus*" based upon allegation that an officer cuffed prisoner's ankle so tight on one occasion that it caused "undue pain" and "physical marks" and on another occasion "cut" his ankle).

### C. Retaliation

Plaintiff also alleges that Defendant Howard retaliated against him for filing multiple grievances at GRCC by ordering officers to confiscate his personal property from his cell. Plaintiff states that, as a result of this alleged "order," he was left without clean clothes, hygiene,

or correspondence materials for approximately three days.  He also claims that, when his property was returned, he noticed "relevant legal materials were missing."

Based upon these allegations, the Court will allow Plaintiff's First Amendment retaliation claim to proceed against Defendant Howard in her individual capacity.

## IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Plaintiff's individual-capacity Eighth Amendment claims against Defendants Ramey and Lewis for deliberate indifference to a serious medical need and against Defendant Byrum for excessive force are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

As such, the **Clerk of Court** is **DIRECTED** to **terminate Defendants Ramey, Lewis, and Byrum as parties to this action**.

As stated above, the Court will allow Plaintiff's Eighth Amendment deliberate indifference to safety claims to proceed against Defendants Howard, Hart, and Moore, and his First Amendment retaliation claim to proceed against Defendant Howard, in their individual capacities.  In allowing these claims to proceed, the Court passes no judgment on the merits of the claims or the ultimate outcome of this action.

The Court will enter an Order Regarding Service and Scheduling Order to govern the claims it has allowed to proceed.

Date:  July 31, 2018

*Joseph H. McKinley*

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

cc:    Plaintiff, *pro se*
       Defendants
       General Counsel, Justice & Public Safety Cabinet, Office of Legal Counsel
4414.011