# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## AT OWENSBORO
## CIVIL ACTION NO. 4:18CV-P24-JHM

**CARL LEE ADKINS, JR.**                                                   **PLAINTIFF**

**v.**

**LESTER LEWIS** *et al*.                                                   **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the motion for summary judgment filed by Defendants DeEdra Hart and Tina Moore (DN 18). Proceeding *pro se*, Plaintiff filed a response to the motion (DN 21). Defendants Hart and Moore filed a reply, in which they also move for summary judgment on behalf of Defendant Felicia Howard (DN 41), and Plaintiff filed a sur-reply (DN 44). For the reasons that follow, the motion for summary judgment will be denied.

## I. SUMMARY OF RELEVANT FACTS

This action arises out of Plaintiff's incarceration at the Green River Correctional Complex (GRCC). Upon initial review of the complaint pursuant to 28 U.S.C. § 1915A, the Court allowed Plaintiff's individual-capacity claims alleging deliberate indifference to safety to proceed against Defendants GRCC Warden Hart; Case and Training Officer Moore; and Unit Administrator Howard based on the facts alleged that follow.[1]

In the verified complaint, Plaintiff maintained that he previously had foot surgery which resulted in him "having a metal plate . . . screwed into the heel bone of [his] right foot." Plaintiff stated that he was transferred to GRCC on September 20, 2017. He alleged that on November 29, 2017, Defendant Howard told him to move to a dorm on an upper floor. Plaintiff stated that

---

[1] The Court also allowed a retaliation claim to proceed against Defendant Howard, but that claim is not included in the motion for summary judgment.

he explained to Defendant Howard that using stairs caused him pain in his foot and further informed Defendant Howard that GRCC "medical staff prescribed Plaintiff a cane and restricted Plaintiff to bottom bunk." Plaintiff stated that he "implored . . . Defendant Howard to not move Plaintiff to upper floor[]" but that she "refused to acknowledge Plaintiff's injury" and told him to move to the upper floor anyway.

Plaintiff maintained that on December 6, 2017, he wrote a letter to Defendant Hart stating that he had been erroneously moved to the upper floor and that the constant use of stairs caused him pain in his foot. Plaintiff stated that he requested that Defendant Hart move him to a lower floor but that she "refused to acknowledge the severity of Plaintiff predicament and ignored Plaintiff's request."

Plaintiff further asserted that on December 25, 2017, he informed Defendant Moore of his medical condition and requested that he be housed on a bottom floor. Plaintiff stated that Defendant Moore told him to "wait until after the holidays to be moved."

Plaintiff alleged that on December 31, 2017, he fell down the stairs and "was rushed to the facility's medical unit" where he was "treated for head, foot, and leg injuries." He stated that his right foot is "permanently bruised, swollen, and stiff" and that "the pain becomes so unbearable that he usually cannot walk." Plaintiff stated that "when he has severe pain, he becomes unable to flex his foot and when the pain lessens it can take up to an hour before he can walk again." Plaintiff maintained that, after his fall, he was moved to the bottom floor.

In their motion, Defendants Hart and Moore argue that they are entitled to summary judgment on grounds that Plaintiff failed to exhaust his administrative remedies as required under the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e, with respect to his claims against them. They point to the Kentucky Department of Corrections (KDOC) inmate grievance

procedure under Corrections Policy and Procedure (CPP) 14.6, attached to the motion. They maintain that Plaintiff stated in the complaint that he filed a grievance but failed to attach any documentation indicating that he fully exhausted his administrative remedies against Defendants. They state that Plaintiff filed a grievance on December 4, 2017, Grievance #17-12-03, regarding his housing assignment, in which he requested to be moved to a lower level where he did not have to navigate stairs. Defendants state, "However, in his grievance, Plaintiff only identified Defendant Howard and made no mention of Defendant Hart or Defendant Moore. Plaintiff did not file any additional grievances naming Defendant Hart or Defendant Moore in reference to his housing assignment on an upper level dorm while at GRCC." They continue, "Ultimately, Plaintiff failed to file any grievance identifying Defendant Hart or Defendant Moore regarding any action or inaction taken by either of these Defendants involving his placement on an upper level at GRCC." In support of this assertion, Defendants rely on an affidavit by GRCC Grievance Coordinator Brandon Stewart. They also attach Plaintiff's December 4, 2017, grievance; the grievance committee findings and recommendations and Warden's review; the grievance appeal filed by Plaintiff; and the Commissioner's review.

In response to the motion, Plaintiff states that he filed a grievance concerning Defendant Hart, which was rejected because "he could not file more than one grievance involving one issue." Plaintiff attached a declaration signed under penalty of perjury to his response. In the declaration, Plaintiff maintains that he wrote a letter to Defendant Hart explaining that he had been moved to a walk where he had to use stairs constantly and that he had an injury that caused him pain when using stairs. He states, "Because that letter to Defendant Hart was ignored, I filed an inmate grievance pursuant to Kentucky [CPP] 14.6 . . . on December 11, 2017." He further states that on December 13, 2017, he "received a 'grievance rejection' notice; such grievance

was rejected due to there being 'already a grievance on this matter.' . . . It was also documented in such grievance rejection notice that I could 'not rewrite' the grievance."

In his response, Plaintiff also maintains that he did not attempt to re-write the grievance because he had already filed a grievance concerning the matter. In the declaration, he states, "Because I was informed by grievance coordinator, Jim Yates, that I could 'not rewrite' a grievance because there was 'already a grievance on this matter' . . ., I complied with the instructions in CPP 14.6 and sought administrative remedial attention via the already pending grievance against Defendant Howard's[] appeals stages."

Further, in his response to the motion, Plaintiff argues that the exhaustion requirement "hinges on the []availability[] of administrative remedies[.]" Plaintiff states that in the first stage of the appeal he "specifically addressed the issue where he 'wrote a letter to Warden Hart[] explaining to her I was moved to a walk where I had to constantly use stairs.'" He states that at that stage of the appeal he also stated that Defendant Hart had ignored his letter. Plaintiff also states, "In regards to the second stage of appeal, the Plaintiff exhausted administratively, seeking remedy for Defendant Moore's deliberate indifference towards the Plaintiff's safety. Such appeal was the last stage of the grievance process . . . ." Plaintiff further argues, "Defendants, Hart and Moore, failed to produce full copy of Plaintiff's grievance and/or specify details in grieva[n]ce's appeals. The grievance included all the issues about which Plaintiff is suing. Defendants Hart and Moore have not provided proof that the Plaintiff failed to raise issues concerning their acts and omissions alleged in this suit . . . ."

Defendants filed a reply in which they argue that Plaintiff failed to exhaust his administrative remedies against Defendants Hart and Moore because he did not identify them in

his grievance. Defendants argue, "the appeal processes in CPP 14.6 are not provided so that an inmate may identify additional staff members and allegations not stated in step one."

Defendants further argue in their reply for the first time that the grievance Plaintiff filed "complained that because he was not housed on a bottom floor he had to navigate stairs." They maintain "Conspicuously missing from his Grievance is the crux of his Eighth Amendment claim as set out in his complaint—that he was injured when he fell down the stairs." Defendants point out that this is because the fall had not occurred yet on the date Plaintiff filed his grievance, November 29, 2017, and that the fall occurred on December 21, 2017. Defendants maintain, "Thus, Adkins failed to 'include all aspects of the issue' in his Grievance at step one of the grievance process that now forms the basis of his Eighth Amendment claim for damages against Hart, Moore, and Howard—his alleged fall down the stairs." They state that he never grieved the fall down the stairs and that "[a]dding the allegation that he fell down the stairs in his appeal to the Commissioner dated January 8, 2018 . . . does not satisfy the mandate to 'include all aspects of the issue' at step one of the grievance process." They argue that this fact also applies to Defendant Howard, and they maintain that all three Defendants are entitled to summary judgment on Plaintiff's claim for damages based on the alleged fall down the stairs.

In his sur-reply,[2] Plaintiff asserts, "Because the Plaintiff could not add Defendant's Hart and Moore in Step 1 of the grievance process does not mean that he failed to exhaust his administrative remedies on their behalf." He continues, "It means that there were a series of events which occurred as a result[] of such grievance and the only remedy administratively available to the Plaintiff was an appeal process." He states, "The Plaintiff could not grieve issues in which involved issues already grieved within the past 6 months (CPP 14.6 E.1). Therefore,

---

[2] The sur-reply responds to arguments raised by Defendants regarding the adequacy of Plaintiff's exhaustion efforts not raised in the original motion for summary judgment and which could not have been addressed in Plaintiff's response. The Court will, therefore, consider Plaintiff's sur-reply herein.

Plaintiff exhausted the available remedies to him regarding 'all aspects of the issues' and all the Defendant's in the grievance appeal stages."

In response to Defendants' argument that Plaintiff failed to file a grievance based on the fall itself, Plaintiff states that "it was not the fall and injury which resulted in him filing this suit but was the fact that Defendants were deliberately indifferent to Plaintiff's need for safety and retaliatory actions towards him which cause the violation of his rights which ultimately resulted in him filing this suit."

## II.  LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party moving for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The moving party's burden may be discharged by demonstrating that there is an absence of evidence to support an essential element of the nonmoving party's case for which he has the burden of proof.  *Id.*  Once the moving party demonstrates this lack of evidence, the burden passes to the nonmoving party to establish, after an adequate opportunity for discovery, the existence of a disputed factual element essential to his case with respect to which he bears the burden of proof.  *Id.*  If the record taken as a whole could not lead the trier of fact to find for the nonmoving party, the motion for summary judgment should be granted.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Where the nonmoving party bears the burden of proof at trial, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Celotex*, 477 U.S. at 323.  The nonmoving party must do more than raise

some doubt as to the existence of a fact; the nonmoving party must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.*, 738 F. Supp. 214, 217 (E.D. Mich. 1990). The moving party, therefore, is "entitled to a judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." *Id.* (internal quotation marks omitted).

Finally, in a case such as this one where "the defendants in prisoner civil rights litigation [have] move[d] for summary judgment on administrative exhaustion grounds, they must prove that no reasonable jury could find that the plaintiff exhausted his administrative remedies." *Mattox v. Edelman*, 851 F.3d 583, 590 (6th Cir. 2017) (citations omitted).

### III. ANALYSIS

The PLRA requires a prisoner to exhaust all available administrative remedies before commencing an action with respect to prison conditions. Specifically, the statute provides, "no action shall be brought with respect to prison conditions under section 1983 . . . , or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court, interpreting § 1997e, has expressly stated: "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). In order "to properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,'—rules that are defined not by the PLRA, but by the prison grievance process itself." *Id.* at 218 (citation omitted) (quoting *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)). To exhaust a claim, a prisoner must proceed through

all of the steps of a prison's administrative process. *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999). The Supreme Court held in *Woodford v. Ngo*, 548 U.S. at 93, that failure to "properly" exhaust bars suit in federal court. "Proper exhaustion" means that the plaintiff complied with the administrative "agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91. But an inmate need only exhaust those remedies that are actually "available"; if an administrative remedy "is not capable of use to obtain relief," then the PLRA will not act as a barrier to suit. *Ross v. Blake*, 136 S. Ct. 1850, 1858-59 (2016).

Requiring exhaustion serves two purposes. First, it gives an agency "'an opportunity to correct its own mistakes with respect to the program it administers before it is haled into federal court,'" and it discourages "'disregard of [the agency's] procedures.'" *Woodford v. Ngo*, 548 U.S. at 89 (quoting *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992)). Second, exhaustion promotes efficiency. *Id.* This is because "[c]laims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court." *Id.* The Sixth Circuit "requires an inmate to make affirmative efforts to comply with the administrative procedures" and analyzes "whether those efforts to exhaust were sufficient under the circumstances." *Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011) (citing *Napier v. Laurel Cty., Ky.*, 636 F.3d 218, 224 (6th Cir. 2011) (internal quotation marks and citation omitted)). Generally, internal exhaustion requires an inmate to state his grievance with sufficient particularity so as "to allow prison officials a fair opportunity to address grievances on the merits, to correct prison errors that can and should be corrected and to create an administrative record for those disputes that eventually end up in court." *Mattox*, 851 F.3d at 591 (quotations omitted).

The KDOC Inmate Grievance Procedure, CPP 14.6, provides that if an inmate wishes to file a grievance, he must do so in writing, and the grievance must include "all aspects of the issue and identify all individuals . . . so that problems concerning the issue or individuals may be dealt with . . . ." (DN 18-2, CPP 14.6, ¶ II(J)(1)(a)(5)).  A grievance may either be rejected or permitted to move on to the informal resolution stage (*Id.*, CPP 14.6, ¶ II(J)(1)).  An inmate may not "retrieve an issue that has been personally grieved within the past six (6) months."  (*Id.*, CPP 14.6, ¶ II(E)(1)).  The Inmate Grievance Procedure also includes a list of twelve non-grievable issues (*Id.*, CPP 14.6, ¶ II(C)).  While there is a multi-step appeals process for grievances that move on to the informal resolution stage, there is no appeals process for grievances that are rejected as "non-grievable."

The parties do not dispute that Plaintiff fully exhausted his claim against Defendant Howard that he was moved to an upper floor despite his alleged pain caused by navigating stairs. In Plaintiff's Grievance No. 17-12-03, received on December 4, 2019, he stated the following:

> On 11-29-17, I was authorized to move from Dorm 8 Lower "A" to Dorm 1 "B" Upper 14.  I explained to U.A. Felicia Howard that she should have considered my medical status before moving me to a dorm that I had to navigate stair in order to get to my cell.  I tried to show her documentation that shows that I have chronic shortening of the Achilles tendon which can be aggravated by inclines[] and that constant use of step causes me pain.  I requested to be moved to a lower level floor but, with malice and deliberate indifference, she told me to leave her office and ignored my request.

Further, the parties do not dispute that Plaintiff also filed a grievance against Defendant Hart, which was rejected as non-grievable.  In that grievance, signed December 11, 2017, Plaintiff stated, "On December 6, 2017, I wrote a letter to Warden Hart explaining to her that I was moved to a walk where I have to constantly use stairs and that navigating the stairs without proper support/guidance, causes me pain. . . . My letter was ignored."  (DN 21-1.)  The grievance rejection notice sent from Grievance Coordinator Jim Yates on December 13, 2017, stated, "This office received the attached grievance on 12-13-2017.  [It is] being returned to you for the

following reason:  This is Non Grievable due to you already having a Grievance on this subject. This is non-grievable per 14.6." (*Id.*)

Defendants argue that Plaintiff's failure to include Defendants Hart and Moore in his initial grievance concerning his request to move to a lower level means that he failed to exhaust his administrative remedies against them.  However, an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues. *Owens v. Keeling*, 461 F.3d 763, 769 (6th Cir. 2006); *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004) (holding that an inmate "cannot be required to exhaust administrative remedies regarding non-grievable issues").  "The non-grievability of [a claim] through the grievance process makes that remedy unavailable under the PLRA, and thus he does not have to pursue that remedy to exhaust his claim." *Owens v. Keeling*, 461 F.3d at 769 (citing *Wyatt v. Leonard*, 193 F.3d 876, 878 (6th Cir. 1999); *Rancher v. Franklin Cty., Ky.*, 122 F. App'x 240, 242 (6th Cir. 2005)).

Thus, because the prison grievance procedure was unavailable to Plaintiff with respect to his claim against Defendant Hart, Defendants cannot now argue that Plaintiff failed to exhaust his remedies as to her.  "Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure." *Reeves v. Hobbs*, 6:11-cv-06047, 2013 U.S. Dist. LEXIS 140698, at *15 (W.D. Ark. Sept. 3, 2013); *see also White v. Jindal*, No. 13-CV-15073, 2014 U.S. Dist. LEXIS 86515, at *19 (E.D. Mich. May 7, 2014) ("Defendant cannot now assert that Plaintiff failed to exhaust the grievance process after being told that his issues were nongrievable."), *report and recommendation adopted by*, 2014 U.S. Dist. LEXIS 85506 (E.D. Mich. June 24, 2014).  Therefore, the Court finds that Defendants have failed to meet their

burden in establishing that there is no genuine issue of material facts with respect to Plaintiff's exhaustion of his claim against Defendant Hart.

In regard to Defendant Moore, the Court is guided by a recent similar case before this Court, in which the plaintiff had filed a grievance naming two of four defendants. *Mays v. Ky. Dep't of Corr.*, No. 3:17-CV-P290-JHM, 2018 U.S. Dist. LEXIS 164136, at *2 (W.D. Ky. Sept. 25, 2018). The grievance was rejected as "non-grievable." *Id.* The two defendants not named in the rejected grievance moved for summary judgment arguing that the plaintiff did not exhaust his administrative remedies against them. *Id.* at *4. However, the Court rejected the argument. The Court found that "because the prison grievance procedure was entirely unavailable to Plaintiff due to the nature of his complaint, there is no way that Plaintiff could have failed to exhaust his remedies as to **any** Defendant." *Id.* at *8 (emphasis added). The Court comes to the same conclusion here. Plaintiff's grievance against Defendant Hart concerning his move to an upper floor was rejected as "non-grievable" because he had already filed his prior grievance concerning the issue against Defendant Howard. Defendants cannot now maintain that he failed to exhaust his administrative remedies against Defendant Moore when the grievance procedure on this issue with respect to Defendant Moore was not available to him.

Moreover, the Court is persuaded that Plaintiff's "affirmative efforts to comply with the administrative procedures," *Risher v. Lappin*, 639 F.3d at 240, including naming Defendant Moore in his grievance appeal, served the purposes of the exhaustion requirement. Defendant Moore was put on notice of the issue and had an opportunity to correct it and resolve it before having to litigate it in this Court. The Court finds Plaintiff's "efforts to exhaust were sufficient under the circumstances" *Id.* Accordingly, the Court finds that Defendants have not met their

burden to show an absence of a genuine issue of material fact with respect to Plaintiff's exhaustion of his claim against Defendant Moore.

The Court next turns to Defendants' argument, first raised in the reply, that Plaintiff failed to exhaust his claim regarding the fall itself and that the claims for damages associated with the fall must therefore be dismissed. In *LaFountain v. Martin*, 334 F. App'x 738 (6th Cir. 2009), the Sixth Circuit reversed the entry of summary judgment based on failure to exhaust. The Sixth Circuit found that the plaintiff had exhausted his claim that the defendant had retaliated against him for filing grievances "by telling other inmates that he was snitch and sexual predator" to motivate other inmates to take hostile actions against him. *Id.* at 740. "'[I]t is sufficient for a court to find that a prisoner's [grievance] gave prison officials fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint.'" *Id.* at 740 (quoting *Bell v. Konteh*, 450 F.3d 651, 654 (6th Cir. 2006)). In reversing summary judgment on the issue of exhaustion, the Sixth Circuit found, "The hostile action that LaFountain claims to have suffered as a result of being labeled a snitch and a sexual predator, such as being accosted in the bathroom and having his cell robbed, is merely the harm he suffered as a result of the alleged retaliation." *Id.* at 741 (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)).

Upon review, the Court finds that Plaintiff's grievance concerning his move to an upper floor gave prison officials fair notice of the basis for his claim here, *i.e.*, that he was moved to an upper floor where he was unable to navigate stairs and as a result fell down the stairs causing him injury. Therefore, the Court finds that Defendants have failed to meet their burden in establishing a lack of a genuine issue of material fact that Plaintiff failed to exhaust his claim related to the fall itself.

## IV.  CONCLUSION

For the reasons stated above, **IT IS ORDERED** that Defendants' motion for summary

judgment (DN 18) is **DENIED**.

Date:    September 17, 2019

*Joseph H. McKinley*

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc:    Plaintiff, *pro se*
       Counsel of record
4414.010